

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*Lee Vartan*                          *970 Broad Street, Suite 700*                    *(973) 645-2762*
*Assistant United States Attorney*    *Newark, NJ 07102*                      *Facsimile (973) 645-2857*

March 2, 2011

Hon. William J. Martini
United States District Court Judge
Martin Luther King, Jr. Federal Building and Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re: *United States v. Ronald Ottaviano et al.*, Crim. No. 10-485

Dear Judge Martini:

Desirous of ensuring the smooth and uninterrupted presentation of evidence at trial, the Government writes to highlight possible evidentiary issues for the Court and the Government's proposed resolution of those issues.

In broad terms, the Government's exhibit list includes the following categories of exhibits: (A) recordings of various of the defendants; (B) documents and objects seized from defendants Ottaviano's and Foster's home and Mid-Atlantic Trustees & Administrators' ("MATA") business office; (C) bonds and related documents sent by MATA to the United States Treasury; (D) e-mail correspondence of various of the defendants seized pursuant to several e-mail search warrants; and (E) summary schedules of the Pure Trust Organizations' ("PTOs") bank accounts maintained by the defendants. The Government addresses the admissibility of each category of exhibits below.

## A.    Recordings

The Government has a number of recordings it intends to introduce at trial, including (1) recordings of defendants Ottaviano and Balice with representatives from the Internal Revenue Service's civil arm; (2) recordings of defendant Ottaviano marketing PTOs and Beneficiaries in Common ("BIC"); (3) undercover recordings of defendants Ottaviano, Balice, and Foster; and (4) jailhouse recordings of defendants Ottaviano and Foster. The Government anticipates that one or more defendants may challenge admission of the recordings as inadmissible hearsay.

None of the recordings is hearsay. All four categories of recordings are the defendants' own statements, while the second and third are both the defendants' own statements, as well as co-conspirator statements. *See* Fed. R. Evid. 801(d)(2) ("A statement is not hearsay if . . . [t]he

statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.").[1]

While it is true that some of the recordings contain statements made by individuals other than the defendants – for example, the undercover recordings include statements made by an undercover law enforcement officer as well as a cooperating witness – those statements are necessary to provide context to the defendants' statements and, therefore, are not hearsay. *See, e.g., United States v. Gajo*, 290 F.3d 922, 930 (7th Cir. 2002) ("[S]tatements are not hearsay to the extent they are offered for context and not for the truth . . . of the matter asserted."); *United States v. Gutierrez-Chavez*, 842 F.2d 77, 81 (5th Cir. 1988) (The co-defendant's "statements are admissible at least as reciprocal and integrated utterance(s) between the two parties, for the limited purpose of putting the responses of the [defendant] in context and making them intelligible to the jury and recognizable as admissions.") (quotations and citations omitted); *United States v. Standley*, 121 Fed. Appx. 728, 729 (9th Cir. 2005) (on a recording containing statements of both the defendant and a confidential informant, the informant's statements were not hearsay because they "were not offered to prove the truth of the matters asserted, [but] [r]ather . . . to provide necessary context for [the defendant's] own statements") (not published).

## B.    Search Warrant Evidence

During its investigation, the Government executed three search warrants, one at the MATA business office, one at the home of defendants Ottaviano and Foster, and one at the home mailbox of defendants Ottaviano and Foster. From the MATA office and defendants Ottaviano's and Foster's home, various documents were recovered, including bonds, PTO documents, customer complaints, and miscellaneous business records. From the mailbox, a number of PTO account statements were recovered. The Government will seek to offer some of those seized documents into evidence under one of two theories.[2]

First, those documents are not being offered for their truth and, therefore, are not hearsay. *See* Fed. R. Evid. 801(c). Indeed, it is the Government's contention that PTOs are sham trusts and BIC a fraudulent debt elimination program and that documents concerning both are not evidence of their truth, but rather proof of their falsity. The Government seeks to admit those seized documents to show, among other things, how MATA operated, the connections among the defendants, and, perhaps most importantly, the defendants' knowledge that MATA was perpetrating a fraud. *United States v. Streeval*, 70 Fed. Appx. 646 (3d Cir. 2003) (not published) is instructive.

---

[1] The Government has previously addressed the Confrontation Clause issues raised by admission of the various recordings. *See* Government's Brief dated January 22, 2011.

[2] Those documents are labeled Government Exhibits 201-225; 300-306; 400-421; 503-519; 630; 633-634; 646-656; and 667-670.

In *Streeval*, the defendant was charged with and convicted of conspiracy and mail and wire fraud counts arising out of a scheme to borrow money from several victims using a fictitious estate as collateral. On appeal, the defendant challenged the admission of certain documents related to the fictitious estate as inadmissible hearsay. The Third Circuit affirmed the district court's admission of the documents holding:

> [T]hese documents were not being offered to prove the truth asserted therein – *i.e.*, that Streeval was the executor or [Streeval's co-conspirator] a devisee of the [fictitious estate]. Rather, that the documents were false was the very reason for introducing them: to establish Streeval's participation in the defendants' fraudulent scheme. Statements introduced to prove the false nature of the matter asserted are not hearsay.

*Streeval*, 70 Fed. Appx. at 649. That is precisely the case here. The Government seeks to admit MATA-related documents to demonstrate their false nature and the defendants' involvement in peddling those false documents. *See also United States v. Ivory*, 875 F.2d 868 (6th Cir. 1989) (ATF forms completed by straw purchasers were not hearsay and, therefore, admissible, because they were admitted not for their truth, but rather for their untruth) (not published); *United States v. Darden*, 70 F.3d 1507 (8th Cir. 1995) (documents and scrapbooks seized from defendants' homes were not hearsay when offered to show association between defendants).

To the extent that one or more of the defendants (or the Court) disagrees, the Government is prepared to establish through live testimony that the seized documents are business records within the meaning of Fed. R. Evid. 803(6). The Government would propose to do so, however, at a Fed. R. Evid. 104 hearing rather than at trial.

## C.   Bonds

The Government recovered a number of bonds and BIC-related documents that were sent by the defendants to the Treasury Department on behalf of themselves and MATA customers.[3] Ultimately, those documents were forwarded by the Treasury Department to an Internal Revenue Service data processing center in Kentucky where they were collected by law enforcement officers for use at trial.

The Government has obtained a business records certification from the data processing center – attached hereto as Exhibit A – through which it plans on offering the bonds and related documents into evidence. It is the Government's contention that those documents are business records. *See* Fed. R. Evid. 803(6) and 902(11).

---

[3] Those documents are labeled Government Exhibits 20-42; 107-119; 226-249; 307-321; 422-433; 439; 601-608; and 682-691.

**D.**   **E-mails**

During its investigation, the Government executed three e-mail search warrants on two e-mail accounts used by various of the defendants. While thousands of e-mails were seized, the Government has identified a subset that it seeks to introduce at trial.[4] Much like the recordings discussed in Section A *supra*, those e-mails are not hearsay since they are both the defendants' own statements, as well as co-conspirator statements. *See* Fed. R. Evid. 801(d)(2). And to the extent that the statements of others – generally customers – are interwoven with the defendants' statements,[5] they are necessary for context and, therefore, not hearsay for the reasons discussed in Section A.

**E.**   **Summary Schedules**

As the Court is aware, all of the defendants maintained PTOs of their own through which they funneled the proceeds of their fraud and shielded their ill-gotten gains from the Internal Revenue Service. Defendants Ottaviano and Foster even shuffled money through several PTOs when they purchased their $500,000 Delaware home that is the subject of Count 10 of the Superseding Indictment.

During the course of its investigation, the Government subpoenaed the bank records associated with those PTOs and assembled schedules of each PTO bank account detailing debits and credits. Likewise, and in large measure based upon those schedules, the Government calculated the taxes due and owing for defendants Ottaviano, Balice, and Foster that are the subject of Counts 11 through 17 of the Superseding Indictment. The Government will seek to introduce those schedules into evidence at trial pursuant to Fed. R. Evid. 1006.[6]

According to this Court in *United States v. Bertoli*, 854 F. Supp. 975, 1051 (D.N.J. 1994):

As long as summary charts meet the following requirements, they are admissible: (1) the underlying documents must be admissible, even if they are never admitted; (2) the underlying documents must be too voluminous for convenient in-court review; (3) the charts must accurately summarize the underlying documents; (4) the summary charts and the underlying documents must have been made available at a reasonable time and place for inspection by the opposing side; and (5) the person who prepared the charts must have been made available for cross examination.

---

[4] Those documents are labeled Government Exhibits 500A-500JJJ; 501A; and 502A-502L.

[5] By "interwoven," the Government is referring to e-mail chains.

[6] Those schedules are labeled Government Exhibits 700-720.

Here, the Government has satisfied the requirements of *Bertoli*. The bank records underlying the summary schedules, which encompass several boxes, are admissible. The schedules have been provided to the defendants, and the underlying bank records made available to them since August 2010 at the United States Attorney's Office. Finally, the schedules are accurate, and the IRS revenue officer who worked to construct those schedules will testify at trial. Accordingly, the Government's summary schedules should be admitted.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

By: Lee Vartan
Christopher Kelly
Assistant United States Attorneys

cc:     Ronald Ottaviano, *pro se* (via United States mail)
        All counsel (via ECF)